invention, especially when I consider that if there be real patentable novelty in the combination, a refusal to grant a patent would operate irremediable injury; whereas, if it be not substantially new, the patent will not prevent the public from the use of the combination; but being only prima-facie evidence in his favor, a jury of the country could protect a party charged with infringement upon evidence given that there is no novelty. Giving, then, to the applicant the full benefit of my doubt, as also of the most favorable interpretation of his claim, I am of opinion that there is error in the decision of the office. Perhaps in concluding this opinion it may be allowed that I suggest to the applicant to amend his specification before the emanation of a patent, so as to make the language of his claim accord unequivocally with the intention which I have ascribed to the terms used therein.

[NOTE. A patent was subsequently issued to the applicant, October 27, 1857, and is numbered 18,499.]

---

## Case No. 2,975.

### In re COLE.

[S Reporter, 105;[1] 7 Wkly. Notes Cas. 114.]

Circuit Court, E. D. Pennsylvania.   May 9, 1879.

PRACTICE—COMMISSION TO TAKE TESTIMONY—EXAMINATION—REGULARITY—COUNSEL AND CLIENT—PRIVILEGED COMMUNICATIONS—PERPETRATING CRIME.

1. Where a commission to take testimony has issued from the court of another circuit, and the aid of the court in whose jurisdiction the witnesses reside is sought to enforce it, the latter court will not inquire into the regularity of the issuance of the commission before compelling witnesses to answer.

2. Privileged communications between counsel and client are those which are lawful, and which relate to the business of the client, and fall within the scope of professional duty. A communication relating to the perpetration of a crime by the counsel is not privileged.

Motion for attachment. C. C. Cole, Esq., was of counsel for the Iowa Central Railroad, in a suit in the circuit court of Iowa, to foreclose a mortgage on said road. R. L. Ashhurst, Esq., was chairman of a committee of stockholders of the road; J. F. Cate was president of the said road; both the latter gentlemen were in frequent confidential communication with Cole, with reference to the litigation and matters connected therewith. During the case certain libellous publications appeared, attacking the character and motives of [Hon. John Dillon, United States circuit judge for the district of Iowa][2] the judge before whom the case was. Cole was charged with the authorship of said publications, and proceedings were had by the Iowa bar association for the purpose of disbarring him as intending to obstruct the course of justice; and a commission was directed by the cir-

cuit court of Iowa to a commissioner in the eastern district of Pennsylvania, directing him to take testimony. Before the commissioner, Messrs. Ashhurst and Cate refused to answer certain questions as to whether they had received certain letters from Cole, &c., on the ground that they were confidential communications between counsel and client. Attachments were then asked for.

Cook & Lane, for the motion.

E. G. Platt and J. C. Bullitt, contra.

BUTLER, District Judge. Two questions were raised: 1. That the circuit court of Iowa had no authority to issue the commission. 2. That the communications were privileged.

As to the first, I, as a judge, have no authority to inquire into the jurisdiction of the circuit court of Iowa, or whether or not there is there pending a civil action. That court has decided that question, and issued a commission. It would be highly discourteous to look behind its record, and I decline to do so.

Secondly, are the communications privileged? The general law in regard to privileged communications is well understood, and originated far back in the history of jurisprudence. How far, in modern times, the law has been modified, it is not now necessary to consider. It is sometimes said that all communications between counsel and client are privileged; but this is too general, and is inaccurate. They must relate to the business and interest of the client; and, moreover, they must be lawful; for, if unlawful, public policy forbids their concealment under the plea of privilege; and, if lawful, they must fall within the scope of professional duty. Communications by counsel to client, likewise, are usually privileged, because closely connected with the client's interest and business. See Weeks, Attys. at Law, p. 252. Suppose a case most favorable to the witnesses, viz., that these communications were by client to counsel, would they be privileged? I do not mean to imply any fault in these gentlemen. I have no doubt they are entirely free from blame. But suppose a client had devised, with the assistance of counsel, a scheme to obstruct the administration of justice, would the communications be privileged? The authorities applicable to such cases say not. The charge here is that Mr. Cole intended to promote perpetration of crime. Had it not been for the learned argument of counsel who opposed the motion, I should not have had the slightest doubt about the case. The matter does not fall within the scope of professional employment. Moreover, these communications have been already given to the public. The inquiry is not what they were, but who made them, and how are the client's interests affected by them? The protection is for the benefit of the client, not the counsel. I am of opinion

---

[1] [Reprinted from 8 Reporter, 105, by permission.]

[2] [From 7 Wkly. Notes Cas. 115.]

ed to the proper officer of the treasury for settlement, and disallowed.

THE COURT (THRUSTON, Circuit Judge, absent), at May term, 1822, decided that the third auditor could not authenticate a copy 'of the bond; his power of authentication, under the act of March 3, 1817 (3 Stat. 366), extending only to "transcripts from the books and proceedings of the treasury in regard to the accounts of the war department," and that copies of bond must still be certified by the register, and authenticated under the seal of the department, according to the act of March 3, 1797 (1 Stat. 512).

## Case No. 15,264.

### UNITED STATES v. GRIMES.

[See Case No. 3,393.]

UNITED STATES (GRIMES v.). See Case No. 5,828.

## Case No. 15,265.

### UNITED STATES v. GRIMES.

[Hoff. Land Cas. 137.] [1]

District Court, N. D. California. June Term, 1856.

MEXICAN LAND GRANT — PERFORMANCE OF CONDITIONS—LOCATION.

No objections to the confirmation of this claim.

Claim for four and a half leagues of land in Sacramento county, confirmed by the board, and appealed by the United States.

[This was a claim by Hiram Grimes for the Rancho San Juan, situated in Placer and Sacramento counties. Granted December 24, 1844, by Manuel Micheltorena to Joel P. Dedmond. Claim filed April 13, 1852. Confirmed by the commission May 8, 1855, and now heard upon appeal by the United States.]

William Blanding, U. S. Atty.
A. C. Whitcomb, for appellee.

HOFFMAN, District Judge. The claimant in this case derives his title by deed from Joel P. Dedmond, the original grantee. The grant issued to Dedmond by Governor Micheltorena on the twenty-fourth of December, 1844, is duly proved, and the expediente containing the petition, diseño and other usual documents, is found in the archives. With regard to the performance of the conditions there is some discrepancy in the testimony. But the witness O'Brien is shown not to have been in the country at the time he swears that no house existed, and his character would seem to be such as to entitle his testimony, even if uncontradicted, to but little weight. But the testimony of Buzzell,

Wyman and Leahey, witnesses to whom Hicks, who was sworn on behalf of the United States, expressly refers as best acquainted with the facts, shows beyond all reasonable doubt that a house was built and a portion of the land cultivated as required by the conditions; and the rancho seems to have been in the possession of Dedmond and his grantees Sinclair and Grimes, up to the present time. The location of the land is said by the commissioners to have been established with sufficient, though not with great, precision. In the grant it is described as bounded on the west by the place belonging to Señor Grimes, on the south by the American river, on the east by the foot of the Sierra Nevada, and on the north by vacant lands, being in extent from east to west three leagues, and from north to south one league and a half. The claimant has put in evidence the expediente in the case of E. Grimes, whose land El Paso is one of the boundaries of the rancho now claimed. It appears by this expediente that the location and boundaries of El Paso are defined with unusual precision, a point of beginning being distinctly stated, and the courses and distances of all the lines given. There would seem, therefore, with the boundary line which separates El Paso from the Rancho of San Juan now claimed, accurately established, with the American river and the foot of the Sierra as the limits on the south and east, and the extent of the land from north to south and from east to west expressly stated, to be no difficulty in locating this with all the accuracy necessary. This claim was confirmed by the board. No new testimony has been taken in this court, nor has any argument been offered or suggestion made to the court of any reason for reversing the decision of the commissioners. I think that a decree confirming the claim should be entered.

## Case No. 15,266.

### UNITED STATES v. GRISWOLD.

[5 Sawy. 25; [1] 10 Chi. Leg. News. 50.]

District Court, D. Oregon. Oct. 9, 1877.

QUI TAM ACTION—ARREST—AFFIDAVIT.

1. The action provided for in sections 3490–3493, of the Revised Statutes, to recover a penalty and damages for making a false claim against the United States is a qui tam one, and may be commenced by any person who will, without the previous authority or consent of the district attorney of the United States, and therefore the complaint in such an action need not be subscribed by such district attorney, but the same is sufficiently "subscribed by the party or his attorney" within the meaning of sections 79 and 81 of the Oregon Civil Code, when it is "subscribed" by the attorney of the person who brings such action.

[Cited in U. S. v. Griswold. 24 Fed. 364.]

[1] [Reported by Numa Hubert, Esq., and here reprinted by permission.]

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]